Thurston MAYO, et al., Plaintiffs,

v.

BALTIMORE CITY PUBLIC SCHOOLS, et al., Defendants.

Civil Action No. JFM–98–2291.

United States District Court, D. Maryland.

March 24, 1999.

Kathleen Howard Meredith, David John Wildberger, Baltimore, MD, for plaintiffs.

Marcia L. Conlin, BCPS Office of Legal Counsel, Baltimore, MD, Dana Hendricks Murray, Assistant Attorney General, Baltimore, MD, for defendants.

## MEMORANDUM

MOTZ, Chief Judge.

Plaintiffs, Thurston Mayo and his parents, Rosetta and David Mayo ("the Mayos"), have brought this action against defendants Baltimore City Public Schools and its Chief Executive Officer, Dr. Robert Booker (together "BCPS").[1] The Mayos claim that BCPS violated the Individuals with Disabilities Education Act ("IDEA"), the Rehabilitation Act, 42 U.S.C. § 1983 and Maryland law by failing to provide Thurston with a free appropriate public education. The Mayos seek reimbursement of the tuition and costs they incurred in enrolling Thurston in a private school for the 1997–98 and 1998–1999 school years, along with other declaratory relief. The parties have filed cross-motions for summary judgment. BCPS's motion will be denied. The Mayos' motion will be granted as to their challenge to the ALJ's decision, but denied as to the applicability of the "stay-put" provisions to their claim. The case will be remanded for further proceedings at the administrative level.

### I.

Thurston Mayo suffers from a language disability, and he has been diagnosed with autism and pervasive developmental disorder ("PDD"). Thurston has attended Norbel School, a private school, since the 1994–1995 school year. As a result of a due process hearing decision concerning the 1994–1995 school year and subsequent settlement agreements with BCPS concerning the following two years, BCPS paid Thurston's tuition at Norbel from 1994–1997.

On March 27, 1997, BCPS held an Admission, Review and Dismissal ("ARD") meeting to determine Thurston's placement for the 1997–1998 school year. During that meeting, the committee determined that Thurston did not qualify for special education services under the IDEA, and attempted to construct a plan to transition him from Norbel into regular education classes at Hamilton Middle School (a BCPS school) for the 1997–1998 school year. In late August, the Mayos and BCPS met at Hamilton Middle School to finalize the transition plan. However, the Mayos did not feel that the plan sufficiently ensured Thurston's safety. In late August or early September 1997, Mrs. Mayo telephoned BCPS to announce her intent to re-enroll Thurston at Norbel for the coming school year.

The Mayos submitted a request for due process hearing on September 25, 1997. On January 21, 1998, Administrative Law Judge Louis N. Hurwitz granted BCPS's motion to dismiss because the Mayos had not complied with Md.Educ.Code Ann. § 8–413(i). That provision requires the parent of a student eligible for special education services to provide the school board with prior written notice of the parent's intention to reject the public placement and to enroll the student in private school.

### II.

▇ The ALJ granted BCPS's motion to dismiss on the grounds that the Mayos' failure to comply with § 8–413(i) barred their recovery of reimbursement for Thurston's private school expenses. Under 20 U.S.C. § 1415(d)(2)(H) and COMAR 13A.05.01.13B–13C, BCPS is required to notify parents of students eligible for special education services of the procedures for obtaining reimbursement for private school tuition.[2] BCPS admits that it did

---

1. The Mayos also named the Maryland State Department of Education and Nancy S. Grasmick as defendants. Those defendants have filed a motion to dismiss without prejudice.

Because the Mayos do not oppose the motion, the motion will be granted.

2. Although certain of the regulations requiring BCPS to provide parents with notice were

not provide the Mayos with notice of the procedural requirements, but argues that it had no obligation to do so because Thurston was not eligible to receive special education services. Whether or not BCPS's assessment of its legal obligations to parents who dispute the school system's assessment of their child's eligibility for services is correct, I am of the view that it is unfair to relieve BCPS of its procedural duties (under the theory that Thurston is not eligible for special education services) but to penalize the Mayos for failure to comply with corresponding requirements. As a result, I find that the notice provisions of § 8–413(i) and the IDEA do not bar the Mayos' claim for reimbursement, and I reverse the decision of the ALJ granting BCPS's motion to dismiss on those grounds.

■ The logical next step is to remand the case for an administrative hearing on the merits of the Mayos' IDEA claim. The ALJ incorrectly dismissed the claim on the basis of a procedural violation, and the merits of the claim have not yet been considered in the administrative process. This Court's limited IDEA jurisdiction permits review of factual findings and legal determinations by an ALJ, but does not generally permit consideration of the substantive merits of IDEA claims in the first instance.

### III.

■ The "stay-put" provisions of state and federal law require that a child remain in his "then-current educational placement" until any disputes over his placement have been resolved. *See, e.g.*, 20 U.S.C. § 1415(j). The Mayos contend that, because they disputed Thurston's 1997–1998 placement throughout 1997–1998 and most of 1998–1999, BCPS is automatically required to pay his tuition at Norbel during that time frame because

Thurston had been enrolled at Norbel at public expense during the three previous school years. While this case presents a close question, I am of the view that the "stay-put" provisions do not require BCPS to pay Thurston's tuition at Norbel during the pendency of this litigation.

The difficulty lies determining Thurston's "then-current educational placement." This is not a clear-cut case in which the parties had agreed on an educational placement and IEP for the school year immediately prior to the year at issue. Instead, the Mayos contend that Norbel was Thurston's "then-current educational placement" based upon the 1995 ALJ ruling in their favor and the two settlement agreements with BCPS allowing Thurston to attend Norbel at public expense during 1995–1996 and 1996–1997. However, for several reasons, I agree with BCPS's view that Thurston effectively had no "then-current educational placement" for stay-put purposes.

The 1995 ALJ ruling determining Thurston's appropriate educational placement for the 1994–1995 school year did not create a permanent "stay-put" placement at Norbel. *Cf. Board of Education of Montgomery County v. Brett Y.*, 959 F.Supp. 705, 713–14 (D.Md.1997) (suggesting that the stay-put effect of an ALJ decision that a private school is the appropriate placement might be limited to the current school year). The 1995 ALJ decision expressly stated that it did not determine whether Norbel was the appropriate placement for Thurston for the 1995–1996 school year (or, by implication, for any future years). As a result, this case differs from the cases cited by the Mayos, in which an administrative decision in the parents' favor on the current school year entitled the student to "stay-put" placement at the private school pending final resolution of the dispute. *See, e.g., Brett*

enacted after Thurston's March 1997 ARD meeting, it is clear that all of the relevant regulations were in place prior to August or September 1997 (when the Mayos decided to

re-enroll Thurston at Norbel). Furthermore, the COMAR provisions requiring BCPS to provide notice to parents were adopted in October 1996.

*Y.,* 959 F.Supp. 705; *Susquenita School Dist. v. Raelee S.,* 96 F.3d 78 (3d Cir.1996). In this case, several school years had elapsed between the ALJ decision and the parents' attempt to rely on the decision for "stay-put" purposes.

Furthermore, as a practical matter, it would be illogical if an ALJ determination that parents are entitled to tuition reimbursement for a single school year because of substantive or procedural IDEA violations by a school board automatically entitled the parents to perpetual tuition reimbursement during subsequent litigation concerning subsequent school years. Without question, litigation over a single school year can often last for several years, and both parties are capable of unnecessarily prolonging the litigation. Mandating "automatic" tuition reimbursement under the stay-put provisions (even where parents' claims are eventually found to be deficient because the public school placement was entirely appropriate) would create a perverse incentive for parents who successfully obtain reimbursement for a single school year to engage in protracted litigation concerning the following school year's placement in order to obtain free private school tuition for the child in the interim. That would be contrary to the spirit of the IDEA, which requires a public school system to reimburse parents for private school tuition only where the public school fails, or is unable, to provide the student with an appropriate education.

During the 1995–1996 and 1996–1997 school years, Thurston attended Norbel at public expense solely as a result of single-year settlement agreements between his parents and BCPS. No ALJ or court ever determined that Norbel was the appropriate educational placement for Thurston during those years. BCPS agreed to pay Thurston's tuition, but did not agree that it was unable to provide a free, appropriate public education to Thurston or that Norbel was an appropriate placement for Thurston. *Cf. Zvi D. v. Ambach,* 694 F.2d 904 (2d Cir.1982) ("Payment and placement are two different matters.") Furthermore, the letters submitted as exhibits demonstrate that BCPS emphatically did not agree that Norbel would be Thurston's "educational placement" for stay-put purposes. The number of settlements in this type of case would decline sharply if any agreement by a school board to pay one year of student's tuition constituted an agreement to change that student's stay-put placement and obligated the school system to subsidize the student's private school education during disputes over subsequent years.

The Mayos' concern about some parents' inability to fund their child's private school placement during lengthy litigation is certainly well founded. However, in the absence of a current ALJ decision in the parents' favor or other circumstances (such as a recent agreed-upon IEP and placement) clearly invoking the stay-put provisions, parents who cannot afford to maintain a private school placement and are sufficiently likely to prevail on the merits of their IDEA claim could pursue a preliminary injunction to require the school system to pay the private school tuition during the pendency of the litigation.

Because I find that Thurston did not have a "then-current educational placement" at Norbel, the Mayos are not entitled to automatic tuition reimbursement under the "stay-put" provisions. They will, of course, be entitled to such reimbursement if they prevail on the merits of their IDEA claim.

For these reasons, BCPS's motion for summary judgment is denied. Plaintiffs' cross-motion for summary judgment is granted as to their challenge to the ALJ's decision and denied as to the applicability of the "stay-put" provisions. The action is remanded for further proceedings at the administrative level.