Pearl MURPHY and Theodore Murphy, Plaintiffs,

v.

ARLINGTON CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION, Defendant.

No. 99 CIV. 9294 CSH.

United States District Court, S.D. New York.

March 1, 2000.

Teddy and Pearl Murphy, Lagrangeville, NY, for Plaintiffs Pro Se.

Raymond G. Kuntz, P.C., Bedford Village, NY, for Defendant.

### MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Plaintiffs, the parents of Joseph Murphy, seek to invoke the stay-put provision

of the Individuals with Disabilities Education Act ("IDEA" or the "Act"), 20 U.S.C. § 1415(j), and to establish the Kildonan School ("Kildonan") as Joseph's current educational placement. Plaintiffs also seek funding for their son's tuition at Kildonan from the Defendant Arlington Central School District Board of Education ("District"). The District maintains that the Arlington High School is Joseph's current educational placement, and that it is not presently financially responsible for Joseph's tuition. The District also contends that there is no case or controversy for this Court to decide as Plaintiffs must first exhaust their administrative remedies concerning their claims for both placement and tuition for the 1999–2000 school year. For the reasons that follow, I hold that (1) certain disputes between the parties are now ripe for judicial decision; (2) Kildonan is Joseph's current educational placement under the Act; and (3) the District is financially responsible for Joseph's tuition until such time as Joseph's placement is changed in accordance with the Act.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

There is no dispute that Joseph is a "child with a disability" as that term is defined by the Act, 20 U.S.C. § 1401(3)(A), and that the IDEA applies in this case. Joseph was identified as a student requiring special education in 1994.

Prior to the events that led to the present disputes, Joseph completed the 1997–1998 school year in the Arlington District School. Therefore, as the 1998–1999 school year approached, Arlington High School was Joseph's then-current educational placement.

An individualized education program ("IEP") was prepared for the 1998–1999 school year which continued to place Joseph at the Arlington School. However, Plaintiffs rejected the IEP and requested a due process hearing, as is their right, pursuant to the IDEA, 20 U.S.C. § 1415. According to the stay-put provision under the Act, 20 U.S.C. § 1415(j), Joseph should have remained in his then-current educational placement, Arlington High School, pending the hearings requested by Plaintiffs. Unwilling to allow their son to remain in what they felt was an inappropriate educational placement, Plaintiffs unilaterally withdrew Joseph from the Arlington School, and enrolled him at Kildonan, a private school. Joseph attended Kildonan for the 1998–1999 school year. Plaintiffs fronted the money for Joseph's tuition.

During the course of the 1998–1999 school year, Plaintiffs continued to pursue their administrative remedies. The statutory scheme in New York provides for a two-tier system of administrative review. N.Y. Educ. Law § 4404(McKinney 1999). For reasons that are not relevant here, the impartial hearing officer ("IHO"), who presided over the initial hearing, did not reach a decision until July 7, 1999. The IHO held that the proposed IEP for the 1998–1999 school year was inadequate to meet Joseph's special needs, Kildonan was an appropriate placement, and that Plaintiffs were entitled to reimbursement for Joseph's tuition and the costs of a private speech pathologist, Gerard Brooks. The District filed a timely appeal invoking the second tier of administrative review.

While the District's appeal was pending before the state review officer ("SRO"), on August 8, 1999 Plaintiffs filed an action in the Northern District of New York. Plaintiffs sought a temporary restraining order requiring the District to fund Joseph's tuition at Kildonan during the pendency of the District's appeal challenging the IHO's decision. The case was subsequently transferred to this Court and referred by me to Magistrate Judge Maas. Judge Maas filed a report and recommendation in which he concluded that this Court lacked subject matter jurisdiction over the instant action as a result of Plaintiffs' failure to exhaust their administrative remedies as the Act requires. He also found that Kildonan should not be considered Joseph's

current educational placement. Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Plaintiffs filed objections to the Magistrate Judge's report. In light of those objections, I reserved decision in order to develop a more complete record and to allow for further briefing regarding the timeliness of the District's appeal to the SRO and the reasons for the SRO's delay in making a decision. Subsequent events and circumstances have rendered the Magistrate Judge's report, while careful and thorough, almost entirely inapplicable.

Unfortunately, the administrative review process does not always coincide with the academic calendar. Disputes often are not resolved before an interim decision must be made regarding the student's education while the parents and school district continue to debate what placement is in the best interests of the child. This is such a case. Before the SRO reached a decision on the District's appeal regarding Joseph's placement during the 1998–1999 school year, which was by then completed, a meeting was convened on September 2, 1999 to discuss Joseph's placement for the 1999–2000 term. An IEP was proposed placing Joseph back at Arlington High School. Plaintiffs did not accept this IEP and continue to enroll Joseph at Kildonan to date. Plaintiffs also continued to fund Joseph's tuition for the 1999–2000 school year.

On December 14, 1999, the SRO reached a decision regarding the District's appeal. The SRO held that the District had not met its burden to demonstrate that the IEP proposed for the 1998–1999 school year was properly tailored to meet Joseph's needs, and that the services provided by Kildonan were appropriate. Accordingly, the SRO upheld the IHO's award of tuition reimbursement. However, the SRO reversed the IHO's award of reim-

bursement for the services of Gerard Brooks, the speech pathologist. In their submission dated February 9, 2000, Plaintiffs stated that the District has "not paid us for the services of Gerard Brooks as ordered by the SRO." Plaintiffs apparently misunderstood that portion of the SRO's decision. The SRO held that the District is not responsible for the cost of services provided by Gerard Brooks. Plaintiffs may appeal that portion of the SRO decision pursuant to 20 U.S.C. § 1415(i)(2) and N.Y. Educ. Law § 4404(3). However, unless and until a court overturns that portion of the SRO decision, Plaintiffs are not entitled to reimbursement for the cost of the speech pathologist.

As a result of the SRO decision, the District reimbursed Plaintiffs for Joseph's tuition for the 1998–1999 school year by check in the amount of $20,750.00 dated January 24, 2000. The District maintains that the payment in no way affects its right to appeal the SRO decision, and has not yet decided whether it will, in fact, pursue an appeal.[1]

On January 7, 2000, Plaintiffs requested a due process hearing for the purpose of seeking reimbursement for the 1999–2000 school year, and challenging the appropriateness of the recommended public school program and placement for Joseph for the 1999–2000 term. By virtue of the disagreement over Joseph's IEP for the 1999–2000 school year and Plaintiffs' initiation of the administrative review process, the parties have begun anew the same process that was just recently completed with respect to the 1998–1999 school year.

Plaintiffs contend that in light of the SRO decision issued in December 1999, Kildonan is now Joseph's current educational placement and should remain his placement during the pendency of these proceedings. Accordingly, Plaintiffs argue that the District now has an ongoing finan-

---

**1.** Both Plaintiffs and the District have four months from the date of the SRO decision, that is until April 14, 2000, within which to bring an appeal. *See Adler v. Education Dept.* *of New York,* 760 F.2d 454 (2nd Cir.1985). The appeal may be made to any state or federal court of competent jurisdiction. *See* 20 U.S.C. § 1415(i)(2)(A).

cial responsibility to fund Joseph's tuition at Kildonan until such time that his placement is changed by agreement of the parties, a final administrative decision in favor of the District from which Plaintiffs do not appeal, or by a court decision in the District's favor.

The District disagrees. It maintains that Joseph's current educational placement is the Arlington High School. According to the District, the SRO decision issued in December 1999 was limited to the 1998–1999 school year and has no prospective effect on either placement or payment. The District asserts that "plaintiffs have made no contention of relatedness concerning their claims for the 1999/00 school year with their claims previously before this Court concerning the 1998/99 school year." (Defendant's Response to Second Set of Judicial Interrogatories pp. 1–2). Consequently, the District maintains that Plaintiffs must first exhaust their administrative remedies before seeking relief for the 1999–2000 term in this Court.

## II. *DISCUSSION*

■ Although the District is correct that it is premature for this Court to rule on the appropriateness of the 1999–2000 IEP before it is finally adjudicated at the administrative level, including a possible appeal to the SRO, Joseph's "current educational placement," as that phrase is used in the Act, is disputed by the parties. Since Plaintiffs have made clear their intentions to continue to enroll Joseph at Kildonan, at least until the current dispute over placement has been settled, financial responsibility for his tuition during this interim period must also be determined. The Act's stay-put provision provides in relevant part that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." 20 U.S.C. § 1415(j). "This provision is, in effect, an automatic preliminary

injunction." *Zvi D. v. Ambach,* 694 F.2d 904, 906 (2nd Cir.1982). Parents seeking to invoke the stay-put provision of the Act need not exhaust their administrative remedies first. Were exhaustion required, it would defeat the purpose behind the stay-put provision, which determines the child's interim placement during the pendency of administrative proceedings. *Cole v. Metropolitan Government of Nashville and Davidson County, Tenn.,* 954 F.Supp. 1214, 1221 (M.D.Tenn.1997) ("Indeed, the protection of the stay put rule would be of little benefit if the plaintiffs are forced to proceed with administrative remedies in order to apply it. . . . [T]he rule is intended to protect the student during the challenge to the change in placement."). Since there is clearly a dispute between the parties over what Joseph's current educational placement is, Plaintiffs are presently properly before this Court, on that issue as well as on the related issue of tuition payment.

As the Second Circuit noted in *Zvi D.,* "[p]ayment and placement are two different matters." *Zvi D.,* 694 F.2d at 908. Nevertheless, as in the case at bar, where both payment and placement are the subjects of dispute, the one determines the other. Accordingly, I will consider each issue in turn.

### A. *The Current Educational Placement*

The Supreme Court has held that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass.,* 471 U.S. 359, 373–374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Therefore, where parents reject a proposed IEP and unilaterally enroll their child in a private school in contravention of the stay-put provision, they must front the money for their child's tuition. However, retroactive reimbursement is not barred in the event that a court, or an administrative decision that has become final pursuant to 20 U.S.C. § 1415(i)(1), upholds the parents'

private placement. *Burlington,* 471 U.S. at 372, 105 S.Ct. 1996. As applied to the case at bar, Plaintiffs violated § 1415(j) when they rejected the proposed IEP for the 1998–1999 school year and enrolled Joseph at Kildonan.[2] Accordingly, Plaintiffs were responsible for Joseph's tuition in the first instance.

The Supreme Court in *Burlington* also held that an administrative decision in favor of the parents and the private school placement "would seem to constitute agreement by the State to the change of placement." *Burlington,* 471 U.S. at 372, 105 S.Ct. 1996. This refers to that portion of the stay-put provision which provides that the child remain in the current educational placement unless the parents and State or local education agency "otherwise agree." 20 U.S.C. § 1415(j). Therefore, once the parents receive an administrative decision in their favor, the current educational placement changes in accordance with that decision, and the parents are no longer in violation of the stay-put provision. This holding was later carried into the regulations as 34 C.F.R. § 300.514(c).[3] Turning to the case at bar, once the SRO issued its decision in December 1999 determining that Kildonan offered an appropriate program, there was an "agreement" under § 300.514(c) between Plaintiffs and the District, *de jure* if not *de facto,* which changed Joseph's placement to Kildonan pending further proceedings.

When Plaintiffs commenced the instant action on August 8, 1999, the SRO had not yet rendered its decision. Plaintiffs argued at that time that the IHO decision finding in their favor triggered § 300.514(c). The District argued that the plain wording of § 300.514(c) limited application of the regulation to SRO decisions.

In his report, Magistrate Judge Maas agreed with the District's construction of the regulation. I reserved decision on this point to allow for further briefing on other issues. Before ruling on this question, the SRO rendered a decision in the Plaintiffs' favor, clearly bringing this case within 34 C.F.R. § 300.514(c). Nevertheless, whether an IHO decision constitutes an "agreement" under the federal regulations, as Plaintiffs initially argued, remains relevant in determining the effective date of Joseph's change in current educational placement which, in turn, affects the date upon which the District became financially responsible for Joseph's tuition. *See* discussion *infra* at Part II.B.2.

Putting aside for the moment the effect, if any, of an IHO decision on placement, even the District concedes that "the decision of the State Review Officer in this matter serves to change the child's 'stay-put' placement to the unapproved private school during the pendency of any judicial review sought by the District of the State Review Officer's decision concerning the 1998/99 school year." (District's Status Report dated December 21, 1999, p. 2). Yet the District maintains that the SRO decision "has no prospective effect on any subsequent litigation that may be initiated concerning subsequent school years." (District's Status Report dated December 21, 1999, p. 3). These positions are inherently inconsistent. The District has acknowledged a change in Joseph's stay-put placement, but would have this Court limit the change to the 1998–1999 school year, which is already completed.

By an unexplained leap of logic, the District then argues that Joseph's current educational placement is once again the Arlington High School. The fact that Ar-

---

**2.** The opinion in *Burlington* refers to the stay-put provision as § 1415(e)(3). This is the same provision as § 1415(j) under an older version of the statute.

**3.** 34 C.F.R. § 300.514(c) states:
If the decision of a hearing officer in a due process hearing conducted by the SEA or a

State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of paragraph (a) of this section [which tracks the stay-put provision].

lington High School was Joseph's current educational placement prior to the SRO decision in his favor is no longer relevant. That placement was superceded by the SRO decision which, as noted, constituted an "agreement" between Plaintiffs and the District to a new placement, namely Kildonan. *See Burlington,* 471 U.S. at 372, 105 S.Ct. 1996; 34 C.F.R. § 300.514(c). Even if the District is correct that the SRO decision regarding placement is only relevant to the 1998–1999 school year, it would hardly make sense to reinstate Arlington High School as the current educational placement for the 1999–2000 term, when the SRO deemed that placement inappropriate for the year immediately prior. The District has confused the concepts of the current educational or pendent placement with what is ultimately determined to be the appropriate placement for the 1999–2000 school year.

That distinction was recognized in *Matthew K. v. Parkland School District,* 1998 WL 84009 at 7 (E.D.Pa.1998):

> Defendant makes much of the fact that the Hearing Officer's decision vindicating the parents' position related only to the 1996–97 school year. The Court agrees with Defendant and intimates no view as to the appropriate placement for Matthew for the current school year. However, pendent placement is an entirely independent determination based on the "last agreed upon placement." The designation of Phelps as Matthew's "pendent placement" does not decide the issue of the appropriate placement for Matthew during the 1997–98 school year.

The fact that the 1999–2000 IEP proposed a return to Arlington High School is similarly irrelevant to the current educational placement determination. Plaintiffs have not consented to this public school placement, there has been no agreement regarding this placement, and there has been no administrative or court decision deeming this placement appropriate. "Certainly, it was not the intent of Con-

gress for the 'then current educational placement' to be the one which the school district proposed for the following school year. This result would completely circumvent the underlying purpose of section 1415(e)(3)(A) [now 1415(j) ] to preserve the status quo." *Cole,* 954 F.Supp. at 1222. The last "agreed upon" placement was Kildonan. Therefore, Kildonan is Joseph's current educational placement.

The District cites *Zvi D. v. Ambach,* 694 F.2d 904, and *Mayo v. Baltimore City Public Schools,* 40 F.Supp.2d 331 (D.Md. 1999), as authority for the proposition that the SRO decision regarding the 1998–1999 school year is wholly unrelated to and has no effect on either placement or reimbursement for subsequent years. However, both cases are distinguishable.

In *Zvi D.,* the parents contested the student's initial placement recommendation. While awaiting administrative review of the initial placement, the parents enrolled their child in a private school program for the 1978–1979 school year. The Board of Education and parents entered into an agreement according to which the Board of Education would fund the student's tuition. However, this written agreement explicitly stated that the funding was limited to the one year and that an appropriate public placement was contemplated for the following year. Although a public placement was recommended in May 1979 for the following year, the parents again rejected the proposal and continued to send their child to the private school for the 1979–1980 school year. The IHO affirmed the public placement recommendation. However, due to a procedural violation, the Board of Education was held responsible for the 1979–1980 tuition as well. The IHO also ordered another evaluation to determine the 1980–1981 placement as a year had passed since the last recommendation. The same public placement was recommended, and the parents rejected the program for the third time. Notwithstanding, the previous administrative decisions, the Court refused

to continue to hold the Board of Education responsible for Zvi's tuition, reasoning that the private school was not the child's current educational placement under the Act. *Zvi D.*, 694 F.2d at 908.

In *Zvi D.*, the only reasons the Board of Education had paid for the previous two years' tuition ·was the explicit one-year agreement and the procedural violation. The parents and Board of Education had clearly limited the agreement regarding financial responsibility to a single year. *See Cochran v. District of Columbia*, 660 F.Supp. 314, 317 (D.D.C.1987) (school may agree to fund all or part of tuition for certain school years during placement dispute without obligating itself to pay for future tuition if dispute continues); *but see Evans v. Board of Educ. of the Rhinebeck Cent. School Dist.*, 921 F.Supp. 1184 (S.D.N.Y.1996) (board of education required to continue funding private school placement where it did not limit explicitly its agreement to temporarily fund tuition during placement dispute). There is no similar agreement in the case at bar. Moreover there was never an agreement regarding placement in *Zvi D.* nor was there an administrative decision determining that the private school was an appropriate placement. The Second Circuit limited its holding to the facts when it stated that "the status quo provision would apply if the Board of Education's Committee on the Handicapped had previously agreed to, or had been ordered to provide private school placement...Payment and placement are two different matters." *Zvi D.*, 694 F.2d at 908.

In the case at bar, there is an SRO decision which addressed both these matters. The SRO held that Plaintiffs are entitled to reimbursement and that Kildonan was an appropriate placement. Although the SRO only ruled on the 1998–1999 IEP and Plaintiffs' response to that IEP, as that was all that was before the SRO when the appeal was filed during the summer of 1999, his decision constitutes an "agreement" under § 1415(j) of the Act

and § 300.514(c) of the regulations. As such the last "agreed upon" placement was Kildonan. Since the proper placement for the 1999–2000 school year is now in dispute, the child is to remain in the then-current educational placement during the pendency of any proceedings, or, in this case, Kildonan. The SRO did not hold that the placement at Kildonan was valid only for the 1998–1999 school year; he did not order, as the IHO did in *Zvi D.*, that Joseph be reevaluated for the following year; he did not comment on the appropriate interim placement should the parties continue to dispute Joseph's placement; and he did not award tuition reimbursement based on a limited short-term agreement or a procedural technicality, but rather, based on the appropriateness of the Kildonan program.

As a result, and absent any express limitation in the SRO's decision, I hold that Kildonan is now Joseph's current educational placement. *See Saleh v. District of Columbia*, 660 F.Supp. 212 (D.D.C.1987) (where private school was deemed an appropriate placement and where hearing officer did not limit determination or rule that private school was not current educational placement, Court would assume that private school was child's current educational placement); *Cochran*, 660 F.Supp. 314 (recognizing power of hearing officer to name interim placement without deeming such placement the child's "current educational placement" under the Act, but only if limitation is explicit and valid reasons are stated therefor); *cf. Jacobsen v. District of Columbia Bd. of Educ.*, 564 F.Supp. 166 (D.D.C.1983) (school may agree to fund tuition and accept private school placement for circumscribed time period, but absent explicit limitation as to time, Court will continue to bind school to agreement until dispute over placement is settled); *Evans*, 921 F.Supp. 1184 (same).

The District seems to suggest that unless the SRO decision, or agreement, explicitly extends its ruling to include future years, its application is limited to the year

in which the dispute arose. The authorities cited by the District do not support this conclusion. In fact, the weight of authority is to the contrary, as indicated by the cases cited above. The District is correct that the SRO decision determining that Kildonan was the appropriate placement for the 1998–1999 school year does not necessarily mean that Kildonan is the appropriate placement for the 1999–2000 term. However, as a result of the SRO decision, Kildonan is Joseph's stay-put placement until the placement dispute is resolved. *See Matthew K., supra.*

In *Mayo*, the other case upon which the District relies, the child began attending a private school at the commencement of the 1994–1995 school year. An administrative decision ultimately upheld the private school placement. However, the decision expressly stated that it did not include a determination regarding the appropriate placement for the 1995–1996 school year. The public school system subsequently entered into two one-year settlement agreements to fund the child's tuition at the private school for the 1995–1996 and 1996–1997 school years. However, the agreements were clearly limited to those two years. As the 1997–1998 term approached, the public school system determined that the child no longer required special education services. The parents rejected this assessment and requested a due process hearing. The parents also sought to invoke the stay-put provision to force the system to pay for their child's tuition at the private school during the pendency of the administrative proceedings determination. Since both the 1994–1995 administrative ruling and the subsequent settlement agreements were explicitly limited, the Court held that the private school was not the child's current educational placement. *Mayo*, 40 F.Supp.2d at 333. The Court also relied heavily on the fact that the 1994–1995 administrative ruling, which the parents argued established the private school as the child's current educational placement, was over three years old. *Id.* at 334. Consequent-

ly, the Court held that the child did not have a "then-current educational placement" for stay-put purposes. *Id.*

As with *Zvi D., Mayo* is inapplicable to the present case. The SRO decision upon which Plaintiffs rely did not include a disclaimer as to future years or preclude prospective application during continued placement disputes. In addition the SRO decision was issued on December 14, 1999, barely two months ago. It can hardly be argued that its findings are already outdated.

For all of the foregoing reasons, I am unpersuaded by the District's arguments, and conclude that Kildonan is Joseph's current educational placement.

### B. Financial Responsibility For Joseph's Tuition (Who Pays, How Much and When?)

In order to facilitate the task of determining financial responsibility for Joseph's tuition, it is useful to divide this case into three distinct time periods. First, there is the period beginning with Plaintiffs' unilateral placement of Joseph at Kildonan, in contravention of § 1415(j) and Joseph's then-current educational placement at Arlington High School, up until the end of the 1998–1999 school year. Second, there is the period from the end of the 1998–1999 term to the date of the SRO decision on December 14, 1999. This second period includes the time during which the IHO rendered his decision on July 7, 1999. Third, there is the period from the date of the SRO decision and continuing forward.

#### 1. Period One: The 1998–1999 School Term

As explained above, *see* discussion *supra* at Part II.A., in the absence of an agreement with the state or local school district, parents who unilaterally change their child's placement are financially responsible for their child's education unless and until that placement is deemed appropriate by administrative decision or a court. *Burlington*, 471 U.S. 359, 105 S.Ct.

1996. In the case at bar, Plaintiffs unilaterally placed Joseph at Kildonan at the beginning of the 1998–1999 term, and were responsible for his tuition until the SRO rendered a decision in their favor. *See* discussion *infra* at Part II.B.2. The SRO's subsequent administrative decision has deemed Joseph's Kildonan placement appropriate. That decision notwithstanding, the Supreme Court stated in *Burlington* that "[i]f the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement violated § 1415(e)(3) [now 1415(j) ]." *Id.* at 374, 105 S.Ct. 1996.

Although the District's time within which to appeal the SRO decision has not yet lapsed, *see* note 1, *supra,* the District has already reimbursed Plaintiffs for Joseph's tuition for the 1998–1999 school year by check dated January 24, 2000 in the amount of $20,750.00. Not surprisingly, Plaintiffs have not contested the appropriateness of this payment. On the present record, it is unknown whether the District intends to appeal the SRO decision to a court of competent jurisdiction pursuant to 20 U.S.C. § 1415(i)(2). However, no appeal has been filed to date. Consequently, there is no current case or controversy before this Court with respect to reimbursement for Joseph's 1998–1999 tuition. As a court of limited jurisdiction, this Court intimates no opinion about the appropriateness of this payment, the effect of this reimbursement on the District's right to appeal the SRO decision, or about the District's potential entitlement to recapture the tuition payment should it prevail if and when it appeals the SRO decision.

### 2. *Period Two: End of 1998–1999 School Term to December 14, 1999*

The second period essentially represents the time between the IHO and SRO decisions. It implicates for the first time the issue of responsibility for the 1999–2000 academic year tuition at Kildonan.

Although I do not decide whether it was appropriate for the District to reimburse Plaintiffs at this stage in the litigation for the 1998–1999 tuition, *see* discussion *supra* at Part II.B.1., the period during which Plaintiffs were in violation of § 1415(j) extends beyond that academic year up until the SRO rendered a decision in Plaintiffs' favor. *See* discussion *infra.* Therefore, the law regarding reimbursement for periods during which a child's private school placement is unilateral remains relevant.

The Supreme Court did not explicitly address whether a school district must immediately reimburse parents for tuition (paid during periods in which the parents were in violation of § 1415(j)) following an administrative decision in their favor, subject to later recapture by the district if it should win on appeal, or whether the school need not reimburse parents until its appeal, if any, has been heard on the merits. Since the right of parents in Plaintiffs' position to reimbursement for the period during which they were in violation of § 1415(j) is not finally confirmed until they prevail on the merits in court, or the period within which to file an appeal to an SRO decision in the parents' favor expires, it seems implicit in the Supreme Court's holding in *Burlington* that it did not intend that school districts be required to make substantial conditional payments. The Supreme Court stated that parents who violate § 1415(j) "do so at their own financial risk," *Burlington,* 471 U.S. at 374, 105 S.Ct. 1996, and distinguished between the period during which parents were in violation of the stay-put provision and the period following an administrative decision vindicating the parents' change in placement. It would make little sense to have school districts reimburse parents for tuition on the condition that the money be returned if and when the school prevails on appeal. Parents of limited financial means will undoubtedly use the money to cover the costs of tuition in the present,

hoping their placement is upheld on appeal in the future. If it is not, school districts may have a difficult time recovering large sums of money that rightly belong to them, while incurring additional litigation costs. "[T]he law is clear that parents who unilaterally place their child in a private school do so at their own risk, and reimbursement may be ordered only after the merits are resolved judicially." *Board of Educ. of Montgomery County v. Brett Y.,* 959 F.Supp. 705, 713 (D.Md.1997); *see also Clovis Unified School Dist. v. California Office of Administrative Hearings,* 903 F.2d 635, 641 (9th Cir.1990) (holding that parents would not be entitled to tuition reimbursement for period prior to administrative decision in their favor unless and until they prevail on the merits of the placement issue on appeal); *Henry v. School Administrative Unit,* 70 F.Supp.2d 52, 59 (D.N.H.1999) (holding parents not entitled to reimbursement for unilateral placement unless they prevail on the merits); *cf. Florence County School Dist. Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (where parents unilaterally change child's placement, "they are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act," however, both administrative decisions found in favor of the school district); *but see Susquenita School Dist. v. Raelee S.,* 96 F.3d 78 (3rd Cir.1996) (awarding tuition reimbursement for period during which parents were in violation of § 1415(j) prior to merits decision, but Court did not distinguish between this period and period following state level administrative decision in parents' favor, nor did it address the school district's right to recover the tuition payment should it ultimately prevail).

■ The foregoing analysis notwithstanding, the landscape is altered in a case, as in the case at bar, where prior to a final decision on the merits, the district reimburses parents for tuition payments made while the parents were in violation of § 1415(j). Since the District has not yet, and may never, file an appeal, I do not decide whether or in what manner the District's reimbursement for the 1998–1999 tuition may affect the rights of the District to appeal the SRO decision or to recapture the payment should it prevail on appeal. *See* discussion *supra* at Part II. B.1. But as to the remainder of the period during which the parents were in violation of § 1415(j), that is up until the effective date of the SRO's decision in Plaintiffs' favor changing Joseph's current educational placement to Kildonan, the regular rules apply and, therefore, I hold that Plaintiffs are not entitled to reimbursement unless and until the District fails to timely appeal the SRO decision, rendering that decision final, or Plaintiffs prevail on the merits.[4]

As previously mentioned, Plaintiffs argue that Joseph's change in current educational placement occurred when the IHO rendered a decision in their favor. If Plaintiffs are right, the District would be financially responsible for maintaining that placement from the date of the IHO decision forward. *See* discussion *infra* at Part II.B.3. However, for the reasons set forth below, I agree with the District and adopt the Magistrate Judge's report, as it pertains to this issue only, that the IHO decision did not constitute an "agreement" to change Joseph's placement from Arlington High School to Kildonan. It was not until the SRO affirmed the IHO's decision, that there was an "agreement" pursuant to 34

4. As noted, the SRO's decision was dated December 14, 1999. For reasons explained *infra* at Part II.B.3., I consider September 17, 1999 as the effective date of the SRO decision. Accordingly, the period for which Plaintiffs must await a determination on the merits in their favor before receiving reimbursement actually ends on September 16, 1999, rather than December 13, 1999. In this context, Plaintiffs will achieve "a determination on the merits in their favor" when the District fails to appeal the SRO decision, or Plaintiffs prevail on an appeal if taken.

C.F.R. § 300.514 making Kildonan Joseph's current educational placement.

The *Second Circuit* has not yet addressed this issue. I note that, in other jurisdictions, this remains an unsettled question of law and there is authority for the position argued by Plaintiffs. *See, e.g., Susquenita,* 96 F.3d at 85 (noting that it was not deciding whether in a two-tier system the decision of an IHO in favor of the parents would constitute an "agreement" for the purposes of pendent placement and tuition reimbursement); *T.H. v. Board of Educ. of Palatine Community Consol. School Dist. 15,* 55 F.Supp.2d 830, 845–846 (N.D.Ill.1999) (holding that Level I decision constitutes "agreement" to change child's then-current educational placement for stay-put purposes).

■ Nevertheless, the language of § 300.514(c) is clear. Only the decisions of "a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal" which agrees with the parents' placement will change the child's current educational placement. The two alternative decision-makers match the two alternative administrative schemes allowed under the IDEA. As previously mentioned, states may implement either a one-tier or two-tier administrative review process. If the due process hearing is conducted by the local educational agency, the state must provide a second level of review adjudicated by a state review official. 20 U.S.C. § 1415(g). If the due process hearing is conducted by the state educational agency, it need not provide for an administrative appeal. Accordingly, § 300.514(c) provides that a decision by either a hearing officer in a due process hearing conducted by the state educational agency, that is a decision by the one and only decision-maker in a one-tier system, or a decision by an SRO, that is a decision by the final decision-maker in a two-tier system, will constitute an "agreement" under the stay-put provision of the Act. New York has adopted a two-tier system. Accordingly, it is only the SRO decision that can affect a change in the child's current educational placement.

In *T.H. v. Board of Education of Palatine,* the Northern District of Illinois held that in a two-tier system, a level I decision in favor of the parents could also affect a change in placement. *T.H.,* 55 F.Supp.2d 830, 845–846 (*see T.H. v. Board of Educ. of Palatine Community Consol. School Dist. 15,* 1998 WL 850819 (N.D.Ill.1998) for additional reasoning by the Court for its holding). However, the Court in *T.H.* did not address the specific language of § 300.514(c).[5] The regulation makes clear that only a state level decision will constitute an "agreement." In support of its decision, the Court in *T.H.* held that both levels of its administrative review process were to be deemed state level, not local, hearings. *T.H.,* 55 F.Supp.2d at 845. In New York, the initial hearing is conducted by an impartial hearing officer selected by the local board of education. N.Y. Educ. Law § 4404(1). The State then oversees the administrative appeal. N.Y. Educ. Law § 4404(2). Therefore, the level I hearing in New York is not a state level hearing.

In *T.H.,* the Court also feared that states might abuse the option provided under the IDEA and employ the two-tier system of review in order to defer financial responsibility. *T.H.,* 1998 WL 850819 at 5. However, the regulatory draftsmen were well aware of the two alternative administrative review procedures when they drafted § 300.514(c), as evidenced by the regulation's references to the due process hearing and administrative appeal. Had

---

5. In fact, its initial holding on this issue, reported at 1998 WL 850819 (N.D.Ill.1998), predated the current version of the regulation. The same goes for the Third Circuit decision in *Susquenita,* and may account for that Court's suggestion that there was, at least, a possibility that an IHO decision in the parents' favor would constitute an "agreement." Paragraph (c) of § 300.514 was first added in March 1999 and did not exist in previous versions of the regulation.

the regulation intended that decisions by an IHO in a hearing conducted by the local educational agency as well as the state educational agency constitute an "agreement," the regulation would have said so. Moreover, it is not clear that even where a state conducts both levels of review in a two-tier system, as it apparently does in Illinois, the initial decision was intended to affect a change in placement. The IDEA did not contemplate that a state would conduct both levels of review in a two-tier system. Although such a scheme does not offend the IDEA, it is arguable that § 300.514(c) was limited in its application, not only to state administrative decisions, as opposed to a local decisions, but also to the final administrative decision available under that state's procedure. Such an interpretation might make more practical sense as the Court in *T.H.* did not address what happens when the level II decision disagrees and overturns the level I decision. Rather than promote stability in a child's education during the pendency of a dispute, treating the level I decision as a change in placement might do exactly the opposite.[6] Since the decision on an administrative appeal should follow shortly after the decision at the initial hearing, at least in theory, it seems preferable to wait for a final disposition, albeit on the administrative level, before the child's placement is changed. While this Court sympathizes with the fears expressed by the Northern District of Illinois that administrative hearings might by unnecessarily delayed, a court may grant appropriate relief where the administrative process has stalled to the point that the due process safeguards guaranteed to parents under the IDEA have been violated.

Since the IHO decision in the present case was not a state level decision, nor the final administrative decision, I hold that

although the IHO found in favor of the Plaintiffs, that decision did not change Joseph's then-current educational placement which was Arlington High School. As such, Plaintiffs were still in violation of § 1415(j), and are not entitled to reimbursement for this period until the SRO decision is upheld in court or it is certain that the District does not intend to appeal the SRO decision.

### 3. *Period Three: December 14, 1999—To Date*

Although the District should not be held financially responsible for the time periods during which Plaintiffs were in violation of the stay-put provision until Plaintiffs' entitlement to reimbursement is settled, the District is presently responsible for maintaining Joseph's current educational placement at Kildonan. "It is undisputed that once there is a state agreement with respect to pendent placement, a fortiori, financial responsibility on the part of the local school district follows." *Susquenita,* 96 F.3d at 84.

Although the Supreme Court addressed only retroactive reimbursement in *Burlington,* several circuit and district courts have since extended the Supreme Court's reasoning in *Burlington,* and taken the next logical step. The Third Circuit summed it up best in *Susquenita School District v. Raelee S.,* and, therefore, I quote at length:

> In this case, as in many other cases, where parents who disagree with an IEP proposal for their child wait for the merits of their case to be addressed through the process of administrative and judicial review, they must make a choice. They may have the child remain in what they believe to be an inappropriate placement or they may elect to pay for what they deem appropriate. This choice is real only for parents who have

---

**6.** Admittedly, only administrative decisions in favor of the parents will constitute an "agreement" under § 300.514(c). Therefore, if the parents prevail in the level I hearing, the child's pendent placement will be changed

according to the Court's construction of the regulation in *T.H.,* and an adverse decision in an administrative appeal will not change that placement back. However, such a scenario may perpetuate an inappropriate placement.

the financial wherewithal to pay for alternative placement. While parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position. The purpose of the Act, which is to ensure that every child receive a 'free and appropriate education' is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education...The prospect of reimbursement at the end of the litigation turnpike is of little consolation to a parent who cannot pay the toll at the outset.

*Susquenita,* 96 F.3d at 86–87.

In *Susquenita,* the parents unilaterally placed their child in a private school after rejecting the proposed IEP for the 1994–1995 school term. The IHO ruled in the school district's favor. However, the appeals panel reversed that decision in June 1995. The school district filed an appeal in federal court. During the pendency of that appeal, the child continued to attend the private school. The Third Circuit held that the appeals panel decision affected a change in the child's pendent placement. Accordingly, the school district was immediately responsible to pay for the child's private school tuition until the placement dispute was resolved on the merits. *Id.* at 84.

The Fifth and Ninth Circuits have made similar holdings. In *St. Tammany Parish School Bd. v. Louisiana,* 142 F.3d 776 (5th Cir.1998), the parents unilaterally placed their child in a private school. A year later, the State Level Review Panel found in the parents' favor, upholding the private school placement. The school board sought judicial review. The district court held that the private school became the child's current educational placement from the date of the state level decision and that the school was financially responsible for

maintaining that placement through the balance of the litigation. The school filed an interlocutory appeal to the district court's stay-put order and the Court of Appeals affirmed. *Id.* at 785. Similarly, in *Clovis Unified School District v. California Office of Administrative Hearings,* the Ninth Circuit held that the school was responsible for maintaining the child's private school placement from the date of the administrative decision deeming that placement appropriate, "and until a court directed otherwise." *Clovis,* 903 F.2d at 641.

█ In the case at bar, once the SRO rendered its decision, there was an "agreement" changing Joseph's pendent placement to Kildonan. From that date forward, the District is responsible for maintaining that placement. "To hold otherwise would mean that parents who could not afford a private placement would be forced to maintain their child in a public placement that an administrative decision held to be inappropriate. This would contravene the purpose of the stay-put provision." *Board of Educ. of Oak Park & River Forest High School Dist. No. 200 v. Illinois State Bd. of Educ.* 10 F.Supp.2d 971, 977 (N.D.Ill.1998). This does not mean that the District must fund Joseph's tuition at Kildonan for the remainder of his education. However, until a new placement is established by either an actual agreement between the parents and the District, or by an administrative decision upholding the District's proposed placement which Plaintiffs choose not to appeal, or by a court, the District remains financially responsible.

Generally, a school district's duty to pay for a child's stay-put costs begins on the date the SRO rendered its decision, December 14, 1999 in this case. All other tuition payments fronted by Plaintiffs prior to that date would remain their responsibility until the District's time to appeal to a court runs out, or the Plaintiffs prevail

on an appeal if taken.[7]  However, in this case the SRO decision was delayed for nearly three months for reasons unknown and without the consent of Plaintiffs.[8]  *See Murphy v. Arlington Cent. School Dist. Bd. of Educ.*, 1999 WL 1140872 (S.D.N.Y. 1999).  Since the date of the SRO decision determines the date upon which Kildonan became Joseph's current educational placement, and, thus, the date the District's financial responsibility for maintaining that placement began, it would be unfair to penalize Plaintiffs for the delay, which they neither caused nor agreed to.

Although Plaintiffs will ultimately be reimbursed for tuition payments they made between September 17, 1999, the date the SRO should have rendered a decision, and December 14, 1999, the date the SRO actually did render a decision, if Plaintiffs prevail on the merits of any appeal, they will not see that money until the litigation process (in the event of an appeal) has come to an end.  Alternatively, if Plaintiffs do not prevail on the merits after appeal, they will never be entitled to reimbursement for that time period.  Consequently, if such unjustified delays in the SRO review process are countenanced, school districts and the State will have strong incentive to delay administrative decisions as a means of deferring or, worse yet, avoiding financial responsibility.  Accordingly, I hold that September 17, 1999, the date the SRO should have rendered its decision, is the effective date of Joseph's change in placement, and, therefore, the District is required to reimburse Plaintiffs for tuition payments made covering the period beginning on that date, and to make tuition payments continuing forward.  This remedy is proper under § 1415(i)(2)(B)(iii) of the IDEA which provides that the court "shall grant such relief as the court determines is appropriate."[9]

7.  Although the District's January 24, 2000 payment, reimbursing Plaintiffs for Joseph's 1998–1999 tuition, flies in the face of this analysis, the appropriateness of that payment is not presently before this Court.  *See* discussion *supra* at Part II.B.1. That payment notwithstanding, my conclusion that Plaintiffs are not yet entitled to reimbursement for any periods, other than that which is covered by the January 24, 2000 check, and during which they were still in violation of § 1415(j) still holds.  *See* discussion *supra* at Part II.B.2. However, the effective date on which Plaintiffs were no longer in violation of § 1415(j) as a result of the SRO decision which changed Joseph's current educational placement to Kildonan is adjusted as explained *infra*.

8.  Pursuant to 34 C.F.R. § 300.511(b), the SRO must render a final decision on appeal "not later than 30 days after the receipt of request for a review." The District filed its appeal of the IHO decision on August 18, 1999.  Accordingly, the SRO should have rendered a final decision no later than September 17, 1999.

9.  I do not decide whether the District may recoup payments made to maintain the current educational placement should it ultimately prevail on the merits.  That question is not presently before me.  However, the District's claim for recoupment in that circumstance may be problematical.  I note that in *Clovis,*

the Fifth Circuit held that the school district and the state were responsible for the child's stay-put costs regardless of which party prevailed on appeal. *Clovis,* 903 F.2d at 641; *see also Henry,* 70 F.Supp.2d at 59 ("the school district must pay for the placement from the date of the agency decision, without a right to reimbursement, even if a federal court reviewing the decision later rules in the School District's favor"); *but cf. St. Tammany,* 142 F.3d at 789 (declining to rule on whether the state could recover stay-put costs if it ultimately prevailed on the merits); *Susquenita,* 96 F.3d at 87 (same); *T.H.,* 1998 WL 850819 at 6 (same).  The Supreme Court implied as much in *Burlington.*  Although the Court required that parents prevail on the merits in order to be entitled to reimbursement for the period during which they were in violation of § 1415(j), success on the merits was not a prerequisite to reimbursement for the period following an administrative decision in their favor.  *Burlington,* 471 U.S. at 372–374, 105 S.Ct. 1996.  The IDEA affords the right to a free and appropriate education.  This guarantee is not altered when parents exercise their procedural rights to contest a placement recommendation.  Only where parents unilaterally change the child's placement do they do so at their own financial risk.  Once there is an "agreement" regarding the private school placement, the parents are again entitled to all the protections of the IDEA. Parents should not be held accountable for the cost of

This Court is not unsympathetic to the District's position and the very expensive responsibility it holds pursuant to the Act. Nonetheless, although costly, the District's obligations under the law are clear.

### III. CONCLUSION

For the reasons stated above, Kildonan is Joseph's current educational placement. Accordingly, the District is financially responsible for Joseph's tuition beginning from the effective date of the SRO decision, September 17, 1999, and going forward.

Therefore, the District is directed to reimburse Plaintiffs for Joseph's tuition covering the period beginning on September 17, 1999 to date.[10] That reimbursement is to be made within twenty (20) days of the date of this Opinion and Order. The District is further directed to continue to fund Joseph's tuition as long as Kildonan remains Joseph's current educational placement.

This opinion is limited to a determination of Joseph's pendent placement and the effects of that placement on financial responsibility for Joseph's tuition at Kildonan, and intimates no view on the merits of the placement dispute for either the 1998–1999 school year or the 1999–2000 school year.

SO ORDERED.

---

a placement to which the state or school district has "agreed." Otherwise, the stay-put provision is rendered meaningless.

**10.** Since the effective date of the SRO decision designating Kildonan as Joseph's current educational placement falls a few weeks after the beginning of the 1999–2000 term, Plaintiffs were still in violation of § 1415(j) until September 17, 1999. Accordingly, the amount of the reimbursement should be pro-rated so that the District is not charged for tuition covering the period between the date of the commencement of the 1999–2000 school year (according to Kildonan's academic calendar) and September 16, 1999. On the present record, there is no indication that Joseph attended summer school. If he did, the District would not be presently responsible for the cost of the summer program as such a program would also predate the effective date of the SRO decision.