**MR. AND MRS. H., as Parents of J.H., Plaintiffs,**

v.

**REGION 14 BOARD OF EDUCATION and Norman Bond, Defendants.**

**No. 3:98CV00093 WWE.**

United States District Court, D. Connecticut.

March 5, 1999.

---

William M. Laviano, Laviano Law Offices, Ridgefield, CT, for plaintiffs.

Mark J. Sommaruga, Sullivan, Schoen, Campane & Connon, Hartford, CT, for defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

## INTRODUCTION

Plaintiffs Mr. and Mrs. H., parents of J.H., a minor special education student, bring this action against defendants, Region 14 Board of Education (the "Board"), and its special services director, Norman Bond ("Bond"), pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. Section 1415 and 42 U.S.C. Section 1983. Both parties have moved for summary judgment, defendants on the entire complaint and plaintiffs as to the First Count and Second Count.

## STATEMENT OF FACTS

The Court summarizes only those facts deemed necessary to an understanding of the issues in, and decision rendered on, these Motions. The Court also incorporates by reference the report of the hearing officer, who found in favor of the Board.

J.H. is a minor residing within the jurisdiction of the Board who is eligible for special education and related services.

When J.H. was four years of age, his parents decided to send him to a Montessori School, rather than a school in the Board's system because they did not wish to wait for J.H. to turn five before commencing his schooling.

In 1994, J.H. enrolled for the third grade at Kildonan, a private school in New York state which serves learning disabled students. On December 19, 1995, while J.H. was still a student at Kildonan, the plaintiffs first requested a Planning and Placement Team ("PPT") meeting with the Board. At no time did the parents indicate that they wished to transfer J.H. to a school within the Board's jurisdiction for the remainder of the 1995–96 school year.

On January 11, 1996, at the initial PPT meeting, plaintiffs and the PPT team determined to update the earlier evaluations, which had been provided by plaintiffs, with a comprehensive multidisciplinary evaluation to be done by the Board, to consist of psychological, speech and language, occupational therapy, educational evaluations and a vision and hearing screening.

The team of evaluators concluded that 1) J.H. was hard working with high cognitive abilities; 2) J.H. fit the profile of a student with learning disabilities, but would suc-

ceed in the regular education or "main-stream" setting with certain modifications. The evaluators further recommended, with concurrence of the plaintiffs, that J.H. receive an audiological evaluation, including Central Auditory Processing Testing. In her report, the audiologist found that, although J.H.'s peripheral hearing was normal, he functioned in many ways as a mildly impaired child. The evaluator recommended that J.H. be treated as a child with a hearing impairment.

A second PPT was held on June 10, 1996 in order to determine J.H.'s educational placement and special program. Mr. and Mrs. H. were accompanied to the PPT by their advocate and their private evaluator/psychologist. The PPT determined that J.H. was eligible for special education as a child with a special learning disability. An individualized education program ("IEP") was developed by the PPT at that meeting. The IEP provided for J.H. to be educated in a regular fifth grade class with the following modifications: time-outs, preferential seating, peer help and note taking, computer use and keyboarding instruction, additional time for testing, and taping of some texts, repetition, speaking slowly, limiting background noise, along with the following provision of support education staff: a five hour a week of direct "pull-out" special instruction in a resource room, four sessions of occupational therapy, one hour a week of speech and language therapy, and 15 minutes of consultation services in order to coordinate classroom modifications and support services. The fifth grade class would have both a teacher and a full time aide. A special education teacher would also be scheduled to spend time in the classroom.

There were other special education students in that classroom who would likewise occasionally leave for pull-out or resource room services. These students were accepted by their peers and their teachers, a matter of concern to the plaintiffs.

The plaintiffs refused to send J.H. to this proposed program. Instead, they requested a due process hearing before the State of Connecticut Department of Education. The plaintiffs asserted that the issue for the hearing was whether the Board had offered an appropriate education program to J.H. during the 1995–96 and 1996–97 school years. Plaintiffs also sought reimbursement of their private placements of J.H. during those years. At the hearing, it was plaintiffs' position that the Board had failed to offer an appropriate educational program, based in part on plaintiffs' belief that J.H. should not be mainstreamed but, instead, needs a self-contained classroom in order to realize education progress.

At the hearing, however, plaintiffs' own testifying psychologist admitted that J.H. did not require the restrictive environment of Kildonan or a completely contained classroom. The independent evaluators who were retained per the order of the hearing officer also concluded that they could not have recommended a self-contained classroom at the June, 1996 PPT based on the information that was available at that time.

The hearing officer issued her well informed decision, and based on the totality of the evidence before her, found that the Board had offered an appropriate program and denied any reimbursement to plaintiffs for their private placement of J.H. at Kildonan.

This appeal to the District Court followed.

### LEGAL ANALYSIS

#### A. *The Standard of Review*

Section 1415(e)(2) of the IDEA provides that:

> the [district] court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence,

shall grant such relief as the court determines is appropriate.[1]

In interpreting Section 1415(e)(2), the Supreme Court has held that, in reviewing whether a proposed program is appropriate, the district court's inquiry should generally focus on two issues: (1) whether the State has complied with the procedures set forth in the IDEA, and (2) whether the particularized education program (the "IEP") developed through the IDEA's procedures was "reasonably calculated to enable the child to receive educational benefits. If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Hendrick Hudson Dist. Bd. Of Ed. V. Rowley,* 458 U.S. 176, 206–7, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

■ The role of the reviewing court in making these assessments is circumscribed. The District Courts are required to give "due weight" to the findings of a state administrative proceeding and the "preponderance" review provision as set forth in Section 1415(e)(2) "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034, *cited in Muller v. Committee on Special Education of the East Islip Union Free School District et al.,* 145 F.3d 95, 101 (2d Cir.1998).

Indeed, the Second Circuit has stated that "*Rowley* requires that federal courts defer to the final decision of the state authorities." *Muller,* 145 F.3d at 101; *Garro v. State of Connecticut,* 23 F.3d 734, 736 (2d Cir.1994). The Second Circuit further noted that "deference is owed to state and local agencies having expertise in the formulation of educational programs for the handicapped." *Briggs v. Board of Educ.,* 882 F.2d 688, 693 (2d Cir.1989).

■ A plaintiff challenging the appropriateness of an IEP bears the burden of proof, and the basis for overturning the findings of any administrative hearing officer lies with the party challenging the findings. In this case, plaintiffs bear both burdens.

## B. *The Standards as Applied*

### A. *The Hearing Officer's Decision*

■ The plaintiffs cannot prevail on their claim that the hearing officer's findings that the IEP was an appropriate educational program offered to J.H. should be reversed. They offer no evidence to show that this Court, giving due deference to the well documented, twenty-three page decision of the hearing officer, should reverse her. Rather, they take her facts as found and put their own spin on those facts, with no evidence to support their spin.

As required by the IDEA, the hearing officer considered the evidence before her and determined that the plaintiffs had failed to prove that the Board's IEP was not reasonably calculated to enable J.H. to receive educational benefits. The hearing officer examined the IEP which was developed by the Board's PPT for J.H. and determined that the Board had complied with both the procedural and substantive requirements. Plaintiffs assert that she failed to comply with the substantive requirements, but cite no authority. The Court, giving due deference to the hearing officer, as it must, finds that she complied with both requirements.

The hearing officer acted well within her discretion in relying on the Board's views as to the many potential benefits that would inure to J.H. from mainstreaming. *See* 20 U.S.C. § 1412(5)(B) (mandate of IDEA is that to the fullest extent possible, disabled children be educated with non-disabled children in the least restrictive environment, *i.e.,* the "mainstream."). Since J.H.'s parents refused to let him even try the Board's program for him,

1. Neither party has requested additional evidence be put on.

plaintiffs ask this Court to speculate or guess at what the results would have been. The Court will not engage in this process.

Summary judgment will be granted to defendants' on the First Count.

### B. *Attorney's Fees*

 In determining liability under the "prevailing party" attorney's fees provision of IDEA, the court examines the relief sought by a plaintiff and compares it with the result obtained. *See* 20 U.S.C. § 1415(e)(4)(B); *Koster v. Perales*, 903 F.2d 131, 134 (2d Cir.1990).

■ In this case, plaintiffs sought to challenge the appropriateness of the IEP offered to J.H. by the Board, and sought reimbursement for tuition that they had paid for J.H. for the 1995–96 and the 1996–97 school years. The hearing officer rejected the plaintiffs' claims. She found that the Board's' proposed IEP was an appropriate educational program and declined to order reimbursement for tuition. Since plaintiffs failed to obtain the relief they sought, granting attorney's fees would be clearly erroneous.

Summary judgment will be granted to the defendants on the Second Count.

### C. *42 U.S.C. § 1983*

The Third Count alleges that "defendants deprived J.H. of a property interest in his education by 'maintaining a policy that no learning disabled children will be outplaced by defendant despite the severity of the disability'" and by "improperly influencing and directing witnesses." These claims are made without any evidence in plaintiffs' summary judgment papers to support them.

The hearing officer found, and this Court agrees, that J.H. was provided with an appropriate educational program. That his parents determined not to accept the program cannot transform this refusal into

a "deprivation of rights" pursuant to the Civil Rights Act of 1964.

Summary judgment will be granted to the defendants on the Third Count.[2]

### CONCLUSION

■ The courts have held that educational agencies are not required to "maximize the potential of handicapped children." *Rowley*, 458 U.S. at 189, 102 S.Ct. 3034. The IDEA guarantees an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents." *Tucker v. Bay Shore Union Free School Dist.*, 873 F.2d 563, 567 (2d Cir.1989). For the reasons set forth in this Ruling, Defendants' Motion for Summary Judgment [Doc. No. 11] is GRANTED in its entirety. The Clerk is directed to close this case.

---

**2.** Defendant Bond is also entitled to qualified immunity under the facts of this case. Mr. Bond violated no "clearly established constitutional right", the essence of the qualified immunity doctrine.