Brian J. WARTON, Plaintiff,

v.

**NEW FAIRFIELD BOARD OF EDUCATION, Defendant.**

**No. 3:00CV1235 SRU.**

United States District Court, D. Connecticut.

Nov. 8, 2000.

David C. Shaw, Andrew Alan Feinstein, Law Offices of David C. Shaw, Hartford, CT, for plaintiff.

Melinda A. Powell, Howd & Ludorf, Hartford, CT, for Board of Educ., New Fairfield, defendant.

Nyle Kimrick Davey, Attorney General's Office, Hartford, CT, for Dept. of Education, defendant.

## RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

EGINTON, Senior District Judge.

This action is an appeal from an administrative decision brought under the Individuals with Disabilities in Education Act ("IDEA") 20 U.S.C.A. 1400, *et seq.* The plaintiff filed this appeal on June 12, 2000, in the Danbury Superior Court from a decision dated May 3, 2000, by Hearing Officer Margaret Slez. The defendant removed this action to this Court on June 30, 2000.

Pending is the plaintiff's motion for a preliminary injunction, seeking to enjoin the New Fairfield Board of Education from removing the plaintiff from the stay-put placement that was identified in the interim report of Hearing Officer, Margaret Slez, on October 13, 1999. For the reasons stated below, the plaintiff's motion [Doc. # 10] will be granted.

## FACTS

The following facts are taken from the plaintiff's complaint and the parties' memoranda.

The plaintiff, Brian Warton, is a twelve year old child who resides in New Fairfield, Connecticut. Brian has been diagnosed with upper motor neuron deficiency, Attention Deficit Hyperactivity Disorder ("ADHD"), and neurological deficiencies of unknown etiology. He is a student who is eligible for and has been receiving educational services pursuant to the IDEA since he was three years old.

In 1997, Brian underwent a neuropsychological evaluation performed by Dr. Armin Thies. Based on this testing, Dr. Thies determined that Brian's cognitive abilities were in the borderline to mildly retarded range. By contrast, measures of achievement and learning produced scores in the average range. Dr. Thies also found that Brian exhibited perseveration, ritualistic behaviors, impaired fine motor coordination, impaired oral praxis, and noted that Brian demonstrated deficits in receptive and expressive speech. In conclusion, Dr. Thies opined that Brian could learn, but that he lacked executive function and the capacity to create complex abstract thought.

During the 1998–99 school year, Brian was in the fifth grade at New Fairfield's Meeting House Hill School. According to the Individualized Education Plan ("IEP") adopted for that year, Brian attended regular education for home room, math, art, music, health, library, lunch and recess for twelve hours a week with the assistance of an aide. Brian was in a special education classroom, named the multicategorical classroom by the New Fairfield Board of Education ("Board"), for reading, language arts, social studies and science for fifteen hours a week. There were nine other students in this multicategorical classroom who exhibited a variety of disabilities. Brian also received occupational therapy, physical therapy, speech therapy, and language therapy for a total of three hours a week.

In June 1998, Brian concluded his studies at the Meeting House Hill School. For

his sixth grade year, Brian entered the New Fairfield Middle School.

In May 1999, as part of his triennial reevaluation, Brian was administered a battery of cognitive and academic performance tests by officials of the Board. He scored lower on these tests than he had in May 1997.

PPT meetings were held in June and July 1999 to draft an IEP for Brian's 1999–2000 school year. However, Brian's parents and the Board were unable to reach an agreement on an IEP for Brian. On August 14, 1999, Brian's parents requested that Brian be placed in regular sixth grade classes until an IEP could be completed. The Board agreed to this interim placement.

On September 13 and 24, 1999, the Placement and Planning Team convened to create an IEP for Brian. Brian's parents insisted on complete mainstreaming and refused to accept the goals and objectives proposed by the Board. Reaching an impasse, the Board placed Brian in mainstream sixth grade classes. However, the Board did not provide any supports for Brian other than a poorly trained paraprofessional.

On September 24, 1999, Brian's parents filed a request for a due process hearing with the State Department of Education. The Department appointed Margaret Slez as an impartial hearing officer to decide the appropriate educational placement under the IDEA for Brian. The parents requested a ruling to permit Brian to remain in the regular classroom during the pendency of the hearings, with appropriate supports, until the end of the first grading period. On October 13, 1999, the hearing officer issued an Interim Order identifying

Brian's stay-put placement as the regular mainstream sixth grade class with appropriate supports as identified prior to the beginning of the 1999–2000 school year.[1]

After eight days of administrative due process hearings, the hearing officer issued a decision on May 3, 2000, which provided a detailed plan for Brian's IEP that included the 2000–2001 school year.

Brian's parents filed this suit in June 2000, challenging the hearing officer's decision. On August 24, 2000, the plaintiff filed a motion for a preliminarily injunction requiring the defendant New Fairfield Board of Education to implement the stay-put placement as determined by the administrative hearing officer in her Interim Order of October 13, 1999.

## DISCUSSION

Congress enacted the IDEA to ensure access to a "free appropriate public education" for all disabled children. 20 U.S.C. sec. 1400(d)(1)(A).[2]

The Supreme Court defines the phrase "free appropriate public education" as "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. V. Rowley*, 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

A procedural mechanism that protects a child's right to a "free appropriate education" is an Individualized Education Plan. An IEP is a tailored written outline of the unique educational needs of an individual student, *see* 20 U.S.C. § 1414(d), which is designed by a Planning and Placement Team ("PPT").[3] The PPT is a group

1. The necessary supports are spelled out by Dr. Judy Itzkowitz in her June 17, 1996 Educational Evaluation of Brian Warton (pp. 9–15).

2. States receive federal funding under the IDEA if they comply with the IDEA's substantive educational goals and procedural protections. *See Honig v. Doe*, 484 U.S. 305, 108

S.Ct. 592, 98 L.Ed.2d 686 (1988). In 1996, Connecticut enacted Conn. Gen. Stat § 10–76a, *et seq.* to meet its requirements under the federal statute.

3. A child's IEP must be revised at least annually. It includes statements of a disabled child's present level of education, instructional objectives and criteria for determining if

of parents, educators, and administrators, that determines the placement for and services required by a student designated for special education services. *See* Conn. Gen. Stat. § 10–76 *et seq.*

If the parents of a disabled child disagree with the educational plan outlined by the PPT, the parents may seek review of such IEP through an impartial due process hearing. Conn. Gen.Stat. § 10–76h(a)(1). Following the hearing, an aggrieved party may bring a civil action in state or federal court. 20 U.S.C. § 1415.

■ A federal court must give due weight to administrative proceedings and must avoid substituting its views of educational policy and methods for those of state educational agencies. *Rowley,* 458 U.S. at 207, 102 S.Ct. 3034.

■ When there is a dispute between a child's parents and the responsible public agency about the child's placement, the IDEA states that "the child shall remain in the then-current educational placement" unless the parties otherwise agree. 20 U.S.C. § 1415(j). Generally, parents invoke the then-current placement, or stay-put provision, to maintain the child's then-current educational placement when they disagree with a school board's proposed change of the child's placement. The purpose of the stay-put provision is to "prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings", *School Comm. of the Town of Burlington v. Department of Educ. of Mass.,* 471 U.S. 359, 373, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), thereby protecting the interests of the parents and their children. *See Susquenita Sch. Dist. v. Raelee S.,* 96 F.3d 78, 84 (3d Cir.1996).

Where a party is seeking an order from the court upholding a stay-put placement under the IDEA, the IDEA statute is in effect an automatic preliminary injunction.

> The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships.

*Zvi D. v. Ambach,* 694 F.2d 904, 906 (2d Cir.1982).

■ It is the plaintiff who bears the burden of proof as the movant and as the party challenging the hearing officer's decision. *Mr. and Mrs. H. v. Region 14 Board of Education,* 46 F.Supp.2d 106 (D.Conn.1999). However, once "a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief." *Drinker v. Colonial School District,* 78 F.3d 859, 864 (3d Cir.1996).

The sole issue before this Court is the determination of Brian's stay-put placement during the pendency of the litigation of the appeal.[4] Plaintiff argues that the appropriate stay-put placement should be the hearing officer's interim order, which was decided before the due process hearings began, and before the hearing officer decided the parents' appeal on the merits. Defendant argues that the plaintiff's stay-put placement is the due process hearing officer's final order.

■ The Second Circuit noted that neither the statute nor the legislative history instructs a reviewing court how to identify the "then current educational placement." The Court recognizes, however, that a child's "then current educational placement" is the place to which the agency and

---

the child is meeting these goals. It also includes an outline of the specific educational services to be provided to each disabled child, and any necessary transition services, along with a statement of interagency responsibilities, for each child. *See* 20 U.S.C. § 1414.

**4.** The court notes that the determination of the plaintiff's stay-put placement may serve as Brian's educational curriculum during this school year and the next.

parents consented before the parents requested a due process hearing. *See Zvi D.*, 694 F.2d at 906.

In 1999, Brian was being transitioned from the Meeting House Hill Elementary School to the New Fairfield Middle School. The summer before the transition, however, Brian's parents and the Board were unable to agree on an acceptable IEP. Because the ongoing dispute dragged on into the 1999–2000 school year, Brian was placed, with the consent of his parents, in a regular sixth grade classroom at New Fairfield Middle School with certain needed supports. When Brian's parents filed for a due process hearing on September 24, 1999, Brian was in the regular classroom setting.[5]

■ When the hearing officer, Margaret Slez, issued her interim report on October 13, 1999, she identified the mainstream setting with the appropriate supports as identified prior to the beginning of the 1999–2000 school year as Brian's stay-put placement. Accordingly, Brian's stay-put placement is the mainstream classroom with the appropriate supports as outlined by Dr. Itzkowitz's report.[6]

Citing *Murphy v. Arlington Cent. Sch. Dist. Bd. Of Educ.*, 86 F.Supp.2d 354 (S.D.N.Y.2000), the defendant argues that Brian's stay-put placement, as identified by the hearing officer's interim report, was superseded by the decision of the hearing officer on the merits, finding that the multicategorical classroom was Brian's proper educational placement. This Court disagrees. The facts in *Murphy* are readily distinguished from those in this case. In *Murphy*, during the pendency of review proceedings, the parents rejected the proposed school board's IEP and unilaterally enrolled their child in a private school in contravention of the stay-put provision. After the final hearing before the due process officer, who found that the private educational setting to which the child was unilaterally moved was the proper placement, the parents applied for a preliminary injunction to remove their child from the private educational setting to the stay-put placement that was identified prior to their unilateral action. The Court denied the injunction, holding that the final order became the stay-put placement. Relying on *Burlington*, 471 U.S. 359, 105 S.Ct. 1996, the Court found that the unilateral placement of the child in the private educational setting and the final due process hearing order that preferred the private educational setting created an agreement as to the stay-put placement of the child. Therefore, the private educational setting became the new stay-put placement.

In this case, there is no unilateral movement by the parents, and the Court finds that there is, at this stage of the proceedings, no evidence of an agreement making the multicategorical classroom Brian's stay-put placement.[7] Accordingly, the final order of the hearing officer can not be Brian's stay-put provision.

### Conclusion

For the reasons stated above, the plaintiff's motion for a preliminary injunction [Doc. # 10] is GRANTED.

The Court orders the New Fairfield Board of Education to place Brian in the

---

5. Plaintiff claims that the Board did not provide Brian with the needed supports identified by Dr. Itzkowitz in her 1996 report. This prompted the parents to file for a due process hearing.

6. Although the Board was not providing Brian with the needed supports as outlined by Dr. Itzkowitz when Brian's parents filed for a due process hearing, the court may burden a school district with new and even onerous obligations during the pendent placement, *see Susquenita*, 96 F.3d at 84, to ensure that the educational needs of a child are met during the pendency of an IDEA proceeding. *See Board of Educ. v. Illinois State Bd. Of Educ.*, 103 F.3d 545, 550 (7th Cir.1996).

7. The Court is ruling herein on the narrow issue of Brian's stay-put placement during the pendency of the appeal. The Court does not hold any view about the merits of the appeal, since a credibility issue will have to be determined by testimony under oath.

mainstream classroom along with the necessary supports as outlined in the June 17, 1996, educational evaluation of Brian Warton by Dr. Judy Itzkowitz.