**BOARD OF EDUCATION OF THE PAWLING CENTRAL SCHOOL DISTRICT, Plaintiff–Counter–Defendant– Appellant,**

v.

**Steven SCHUTZ, Yvonne Schutz, Defendants–Counter–Claimants– Appellees,**

**State Education Department of the State of New York, Frank Munoz, as the State Review Officer of the State Education Department of the State of New York, Defendants–Appellees.**

**Docket No. 01–7541.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 10, 2002.

Decided: May 13, 2002.

---

Karen S. Norlander, Girvin & Ferlazzo, P.C., Albany, NY, for Plaintiff–Counter–Defendant–Appellant.

Julie M. Sheridan, Attorney General's Office, State of New York, Albany, NY, for Defendants–Appellees.

RosaLee Charpentier, Family Advocates, Inc., Kingston, NY, for Defendants–Counter–Claimants–Appellees.

Before SACK, KATZMANN and FLETCHER,* Circuit Judges.

FLETCHER, Circuit Judge.

The Board of Education of the Pawling Central School District (the "District") appeals from a final judgment of the United States District Court for the Northern District of New York (David N. Hurd, *District Judge*), granting defendants', (Steven and Yvonne Schutz ("the Schutzes"), the State Educational Department of the State of New York ("NYSED"), and State Review Officer ("SRO") Frank Munoz (in his official capacity)) motion to dismiss the District's complaint in its entirety. In its complaint, the District requests, *inter alia,* a declaratory judgment that SRO Munoz's order directing it to pay the Schutzes prospectively for the cost of their child's tuition violated the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400

* The Honorable Betty B. Fletcher of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

*et seq.*, the Fourteenth Amendment, and 42 U.S.C. § 1983. The district court held: (1) that the State defendants were entitled to sovereign immunity as to plaintiff's 42 U.S.C. § 1983 claim, and, alternatively, a subdivision of the State could not sue the State for an alleged violation of due process; and (2) that plaintiff failed to state a claim for relief under the IDEA. We affirm.

## I. BACKGROUND

### A. *Factual Background*

The factual background of this case is undisputed, unless otherwise noted. Kevin Schutz, the child of Steven and Yvonne Schutz, first enrolled in the District's public school system as a kindergarten student in 1991. Classified as a student with a learning disability in 1993, Kevin received special education pursuant to an "individualized education program" ("IEP") during the 1993–94 and 1994–95 school years. In the fall of 1995, the Schutzes objected to the proposed IEP for the 1995–96 school year, unilaterally removed Kevin from the District school, and enrolled him in the Kildonan School ("Kildonan"), a private school serving children with learning disabilities.

Unable to resolve the dispute over Kevin's IEP for the 1995–97 school years, in 1997 the Schutzes requested an impartial hearing, arguing that the District failed to provide a "free appropriate public education" ("FAPE"). In May 1996, the Schutzes sought reimbursement for the cost of tuition at Kildonan for both the 1995–96 and 1996–97 school years.

On September 4, 1997, the hearing officer issued an opinion in favor of the Schutzes, finding that the District failed to make a FAPE available to Kevin, and awarding reimbursement of tuition costs for both academic years. The District's appeal to SRO Munoz was denied, and the District subsequently reimbursed the Schutzes in compliance with Officer Munoz's order.

Subsequently the Schutzes objected to the IEPs proposed by the District for the 1997–98 and 1998–99 school years, and the District, prior to any hearings on the matter, reached settlements with the Schutzes pursuant to which the District reimbursed what appears to be either the bulk of, or all of, Kevin's Kildonan tuition for those years in return for the Schutzes agreement to withdraw their requests for administrative hearings. Despite the District's claim that its 1999–2000 IEP was substantially different from previous plans, the Schutzes also rejected the 1999–2000 IEP, re-enrolled Kevin at Kildonan, and subsequently requested a hearing before an impartial hearing officer, seeking tuition reimbursement for the 1999–2000 school year.

### B. *The Proceedings Below*

At the administrative hearing, the Schutzes sought to invoke the pendency provision, also known as the "stay put" provision, of the IDEA, at 20 U.S.C. § 1415(j), and requested an interim ruling that the District be ordered to pay Kevin's tuition at Kildonan during the pendency of the proceedings concerning their 1999–2000 school year reimbursement claim.[1]

---

1. As to the merits of the Schutzes' claim for reimbursement, on August 17, 2000, the hearing officer found that the District made a FAPE available to Kevin for the 1999 2000 school year, and that the Schutzes improperly rejected it. For that reason, he denied their claim for reimbursement. At the time of the district court opinion in the case at bar, the Schutzes had appealed that decision to SRO Munoz. Subsequent to Judge Hurd's opinion in this case, SRO Munoz reversed the determination of the hearing officer, in a decision

That request was denied by the hearing officer on November 5, 2000.

However, on appeal, SRO Munoz annulled the hearing officer's ruling in a decision issued on March 16, 2001, and ordered the District to "reimburse petitioners for their expenditures for their son's tuition at the Kildonan School during the pendency of the proceedings brought concerning the boy's educational placement for the 1999–2000 school year."

In response, the District filed an action in federal district court, pursuant to 20 U.S.C. § 1415(i)(3)(A), seeking to vacate SRO Munoz's order and requesting, *inter alia,* a declaratory judgment that SRO Munoz's order directing the District to pay tuition prospectively violated the IDEA and the Fourteenth Amendment, and equitable relief in the form of reimbursement for $21,000 in tuition already paid to the Schutzes.

The district court granted defendants' motions to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), and directed the District to "immediately comply" with SRO Munoz's order requiring prospective payment of tuition to the Schutzes.

dated November 9, 2001, finding that the District's proposed IEP was inadequate, and ordering the District to reimburse the Schutzes for tuition for the 1999–2000 school year. The parties have not informed us whether SRO Munoz's ruling is being, or has been, appealed by the District.

Regardless, we find this to be a classic instance of a harm "capable of repetition, yet evading review." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (internal quotation marks and citation omitted). This "exception to the mootness doctrine" applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again...." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal quotation marks and citations

We review here the district court's dismissal of the District's complaint.

## II. DISCUSSION

### A. *Standard of Review*

We review *de novo* the district court's dismissal of a complaint pursuant to Rule 12(b)(6). *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir.2002). We must accept as true the allegations contained in the complaint, and all reasonable inferences must be drawn in favor of the non-movant. *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir.1999).

### B. *The District's 42 U.S.C. § 1983 Claim*

In its complaint, the District alleges, pursuant to 42 U.S.C. § 1983, that defendants NYSED and SRO Munoz, in his official capacity, deprived the plaintiff of its property without due process, in violation of the Fourteenth Amendment.

The district court dismissed this cause of action against both state defendants on the grounds of Eleventh Amendment immunity, and, alternatively, because the Fourteenth Amendment does not protect a po-

omitted); *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (noting that the "capable-of-repetition doctrine applies ... generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality"). In this case, unless the question of the District's obligation to pay Kevin's tuition pending resolution on the merits of a given proposed, and rejected, IEP is resolved by this court, the Schutzes legal claim for tuition payment during such pendency will likely be repeated, perhaps as often as every school year, and will continue to evade review. The usual requirement that an actual controversy exist at all stages of litigation, *Roe,* 410 U.S. at 125, 93 S.Ct. 705, does not preclude a decision by the court in cases, such as this, which precisely fit the so-called "capable-of-repetition" doctrine. *Lyons,* 461 U.S. at 109, 103 S.Ct. 1660.

litical subdivision, such as the District, from actions taken by its own state.

■ We agree with the district court that the Eleventh Amendment requires dismissal of this cause of action. See *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that the Eleventh Amendment protects both states and state officials, acting in their official capacity, from suits brought pursuant to 42 U.S.C. § 1983); accord *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 414 (2d Cir.1999).

On appeal, the District argues that § 1983 suits seeking prospective equitable relief are not barred by the Eleventh Amendment. While true that suits for injunctive relief, even against state officials in their official capacity, are not necessarily foreclosed by sovereign immunity, *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304; *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), plaintiff's complaint seeks in part retrospective relief which *is* precluded by the Eleventh Amendment. *Ward v. Thomas,* 207 F.3d 114, 120 (2d Cir.2000) (noting that "retrospective form[s] of relief [are] barred by the Eleventh Amendment").

With respect to prospective tuition payments, moreover, there was no due process violation. The District was afforded notice and a hearing before being ordered to make them. The District also seeks reimbursement from the Schutzes[2], and prospective relief by way of declaratory judgment. Neither of these forms of relief is barred by Eleventh Amendment governmental immunity. As we explain in section II.C., below, however, any such relief would violate the IDEA's statutory provi-

sions and implementing regulations. No § 1983 claim by the District can therefore lie for deprivation of its property without due process of law.

■ The District also makes what it concedes is a novel argument, namely, that by voluntarily receiving federal funds for IDEA programs, the state defendants expressly abrogated sovereign immunity against these suits under 20 U.S.C. § 1403(a) ("A State shall not be immune under the eleventh amendment to the Constitution . . . from suit in Federal court for a violation of this chapter."). This argument overlooks the obvious fact that § 1403(a)'s waiver of sovereign immunity extends only to claims brought *pursuant to* the IDEA, not claims brought pursuant to § 1983 or some other statute. Furthermore, a waiver of sovereign immunity must be "made either by invoking federal jurisdiction or by a clear declaration, a 'stringent' test." *McGinty v. New York,* 251 F.3d 84, 92–93 (2d Cir.2001) (quoting *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expenses Bd.,* 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)). The IDEA contains no such clear statement with regard to § 1983 claims, and so cannot be construed as a waiver.

For these reasons, we agree with the district court that plaintiff's § 1983 claims must be dismissed.

We need not reach the district court's alternative holding that a subdivision of the State cannot sue the State for an alleged violation of due process.

## C. *The District's IDEA Claim*

The IDEA "assure[s] that all children with disabilities have available to them . . .

---

**2.** The District brings suit against the Schutzes under § 1983 apparently on the theory that, although they are not themselves state actors like the other defendants, in obtaining tuition and tuition reimbursements they were acting

in concert with other defendants who were acting under color of state law. *See, e.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 68, 119 S.Ct. 992, 143 L.Ed.2d 154 (1999) (quoting 20 U.S.C. § 1400(C)) (internal quotation marks and citations omitted). Under the IDEA, federal money is available to "assist state and local agencies in educating handicapped children," provided that the recipients of those funds comply with various provisions of the Act. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); 34 C.F.R. §§ 100.7, 104.61, (providing for federal monitoring of state and local compliance with the IDEA). Specifically, the IDEA provides for the creation of an IEP for each child as part of the child's FAPE. 20 U.S.C. § 1414(d). The IEP is collaboratively developed among parents of the child, educators, and other specialists. 20 U.S.C. § 1414(d)(1)(B); *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (noting that Congress "envision[ed] the IEP as the centerpiece of the statute's education delivery system for disabled children"). Recognizing that "educational policy and practice are traditional State and local functions," *J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 65 (2d Cir.2000), Congress left "implementation responsibilities" to the various state educational service agencies. *Id.*

Because the "individualized education program team," composed of parents and education professionals, 20 U.S.C. § 1414(d)(1)(B), cannot always agree on an appropriate IEP for the child, states are required to develop procedural safeguards to "guarantee parents both an opportunity

for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311–12, 108 S.Ct. 592.

In New York, parents who object to a proposed IEP may request an "impartial due process hearing" before a hearing officer. N.Y. Educ. Law § 4404(1). Subsequent to such a hearing, any aggrieved party may then appeal the decision of the hearing officer to the State Review Officer. *Id.* § 4404(2). The SRO's decision is final, and concludes the state administrative review. Upon issuance of a final administrative decision, however, a dissatisfied party has the right to bring a civil action in either federal or state court pursuant to the IDEA. 20 U.S.C. § 1415(i)(2)(A).

Although parents who "unilaterally change their child's placement during the pendency of [the above] review proceedings, without the consent of state or local school officials, do so at their own financial risk," *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373–74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), if ultimately successful in the review proceedings, they are permitted to seek retroactive recovery of past tuition expenses. *Id.* at 372, 105 S.Ct. 1996.

Furthermore, during the pendency of the due process review proceedings, parents are entitled to have the child "stay put" in his or her "current educational placement." 20 U.S.C. § 1415(j)[3]; *Honig*, 484 U.S. at 323, 325, 108 S.Ct. 592 (finding that in "[t]he language of [the stay put provision, Congress] unequivocally," intended to "strip schools of the *unilateral* authority they had traditionally employed"

**3.** The statute reads, in relevant part: "Except as provided in subsection (k)(7) of this section, during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child...." 20 U.S.C. § 1415(j).

and that the provision "means what it says"). The meaning of the phrase "current educational placement," never expressly defined in the statute, is at the heart of the dispute between the parties in the case at bar.

In *Burlington,* the Court observed that an administrative decision in favor of the parents "would seem to constitute agreement by the State to the change of placement," 471 U.S. at 372, 105 S.Ct. 1996; in other words, the decision would seem to constitute a "current educational placement." Other courts have followed this understanding of the relevant statutes. *See, e. g., Susquenita Sch. Dist. v. Raelee S.,* 96 F.3d 78, 83 (3d Cir.1996) (holding that "[t]he decision of the Supreme Court in *Burlington* established that a ruling by the education appeals panel in favor of the parents' position constitutes agreement for purposes of [the pendent placement provision]"); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* 86 F.Supp.2d 354, 366 (S.D.N.Y.2000) (Haight, *J.*) ("Once the SRO rendered its decision, there was an 'agreement' changing [the student's] pendent placement to Kildonan. From that date forward, the District is responsible for maintaining that placement.").

■ In the instant case, the district court found that the most recent final administrative ruling on Kevin's "current educational placement" occurred in September of 1997, when the District lost its appeal from the hearing officer's determi-nation that Kildonan was the current educational placement. For that reason, the district court ruled that the District was obliged to continue Kevin's placement at Kildonan, pursuant to 20 U.S.C. § 1415(j), until such placement was changed in accordance with the relevant provisions of the IDEA. The district court ordered the District to comply with SRO Munoz's decision that it pay for Kevin's placement at Kildonan during the pendency of the administrative review.

As further support for its decision, and in the absence of an express definition for "current educational placement" in the text of the IDEA, the district court cited a recent amendment to the United States Department of Education regulations, found at 34 C.F.R. § 300.514(c), which states that the decision of a hearing officer agreeing with the position of the parents "must be treated as an agreement between the State and local agency and the parents [in making pendency determinations]."[4] *See Murphy,* 86 F.Supp.2d at 358, n. 3 (noting that the holding of *Burlington* was "later carried into the regulations as § 300.514"). The District responds that this change in the regulation defies, rather than codifies, the Supreme Court's holding in *Burlington.* We find that argument unpersuasive and agree with the district court that the change in regulations affirms, rather than undermines, the decision in *Burlington* and its progeny, cited *supra.*[5]

---

4. In full, the regulation provides: "If the decision of a hearing officer in a due process hearing conducted by the [State Education Agency] or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents [in making pendency determinations]." 34 C.F.R. § 300.514(c).

5. The interpretive comment to a 1999 amendment to the regulation, at 34 C.F.R. § 300.514(c), explicitly states that it "incorporates [the] interpretation" found in *Burlington, Susquenita,* and *Clovis Unified Sch. Dist. v. Office of Admin. Hearings,* 903 F.2d 635, 641 (9th Cir.1990), that a "State review official's decision [ ] in agreement with parents that a change in placement is appropriate . . . constitutes an agreement by the State agency and the parents for purposes of determining

The District argues against the interpretive conclusions reached by the district court on the ground that the foregoing analysis contravenes the statutory mandate of 20 U.S.C. § 1412(a)(10)(C)(ii) [6], allowing for payment to parents for the cost of a child's private school tuition "if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." According to the District, § 1412(a)(10)(C)(ii) requires findings by a court or hearing officer, as a necessary predicate to an order of reimbursement, that the IEP offered by the school district is defective and that the parents are otherwise entitled to such an award. The District argues that the language of the pendency provision in the IDEA does not provide for reimbursement of private school tuition in contravention of § 1412(a)(10)(C)(ii), and that no finding was made here sufficient to trigger reimbursement under the aforementioned provision.[7] In other words, the District contends that the 1997 determination that the District's proposed IEP was inadequate, and the attendant order that the District

pay for Kevin's placement at Kildonan, did not constitute a current educational placement.

The District's interpretation of the statutes involved is unconvincing. Under the District's interpretation of the relationship between §§ 1412(a) and 1415(j), regardless of whether a student already receives tuition reimbursement for attendance at a private school, a school district's act of proposing a new IEP for a new school year abrogates the application of the "stay put" provision for the academic year covered by the proposed IEP. Such an interpretation would undermine entirely the pendency placement provisions of the IDEA, allowing a school district to avoid altogether § 1415(j) by the mere proposal of a new IEP. *Murphy*, 86 F.Supp.2d at 366 ("To hold otherwise would mean that parents who could not afford a private placement would be forced to maintain their child in a public placement that an administrative decision held to be inappropriate.") (internal quotation marks and citation omitted). Both the statutory structure and the established notion that the stay put rule is a protective mechanism intended to maintain the last proper placement during review of

the child's current placement during subsequent appeals." 64 Fed.Reg. 12615 (March 12, 1999) (citing above listed cases).

**6.** This 1997 amendment to the IDEA provides, in relevant part: "(ii) Reimbursement for private school placement. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or the referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii).

**7.** The District also argues that the district court ruling was in contravention of *Zvi D. v. Ambach*, 694 F.2d 904 (2d Cir.1982), which, it claims, stands for the proposition that a reimbursement does not constitute a placement. In addition to the fact that *Zvi D.* predates the Court's decision in *Burlington*, and the consequent changes to the federal regulations, it is factually distinct from the case at bar. In *Zvi D.*, the reimbursement was initially caused by a stipulation entered into by the parties without an administrative order and later continued when the hearing officer ordered reimbursement due to a procedural failure by the school board committee in charge of evaluating the complaining student's status. *Id.* at 907. Here, the reimbursement was ordered by the hearing officer after a determination that the proposed IEP was inadequate.

an IEP require us to reject the District's arguments.

As the district court found, the more reasonable interpretation is that § 1412(a)(10)(C)(ii) is addressed to those situations where the parents have not yet successfully challenged a proposed IEP. As discussed above, once the parents' challenge succeeds, as the Schutzes' did here in 1997, consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district. To read this provision in the manner recommended to us by the District would eviscerate the very protection Congress sought to provide through the enactment of § 1415(j). See *Susquenita*, 96 F.3d at 83 (finding that § 1415(j) represents "Congress'[s] policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved") (citations omitted).

We cannot endorse the District's argument that because Kildonan is not state accredited, reimbursement is improper. The Supreme Court rejected a similar argument in *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12–13, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). To add to the statute a requirement that, once a school district fails to provide a FAPE, parents' choice must satisfy rigorous District-approved criteria "would defeat the statutory purpose" by leaving children without an appropriate educational choice. *Id.* Moreover, "it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the

first place." *Id.* (citations and internal quotation marks omitted).

The District's fear that our interpretation of the IDEA requires it to reimburse the Schutzes perennially for their child's private education is misplaced. As the district court held in *Murphy*, our conclusion "does not mean that the District must fund [Kevin's] tuition at Kildonan for the remainder of his education," but rather that, "until a new placement is established by either an actual agreement between the parents and the District, or by an administrative decision upholding the District's proposed placement which [the Schutzes] choose not to appeal, or by a court, the District remains financially responsible." *Id.*, 86 F.Supp.2d at 366.

■ We therefore hold, in conformity with the understanding of *Burlington* manifested in the agency's 1999 amendments to the federal regulations and in tandem with the holdings in *Susquenita*, *Murphy*, and other cases, that an order for reimbursement predicated on a finding that a proposed IEP is inappropriate for a child constitutes a change in the child's current educational placement for purposes of interpreting the pendent placement provision, at § 1415(j), of the IDEA.

■ For purposes of this case, we find that the decision by the hearing officer on September 4, 1997, awarding the Schutzes tuition reimbursement for the 1995–96 and 1996–97 school years, affirmed by the SRO's dismissal of the District's appeal on September 8, 1998, constituted a change in Kevin's current educational placement for purposes of the pendent placement provisions. In his September 1998 decision, SRO Munoz concluded that "[the District] could not meet its burden of proof that it provided an appropriate placement for the child for the 1995–96 and 1996–97 years" and that "the services [at Kildonan that the Schutzes] selected for their son were

appropriate." Thus, he "agree[d] with the child's parents that a change of placement [was] appropriate." 34 C.F.R. § 300.514. The District was therefore required to pay the costs of tuition at Kildonan during the pendency of the proceedings concerning the District's proposed IEP for the 1999–2000 school year.

## III. CONCLUSION

We find the reasoning of the district court persuasive, in view of the language, structure, and purpose of the IDEA, the case law interpreting it, the agency's interpretation of it, and Congressional intent in establishing the Act's procedural safeguards, and hold that a final administrative decision by a state review board, agreeing with a parent's decision about their child's placement, constitutes a "placement" within the meaning of the pendent placement provision of the IDEA.

We affirm the district court's order dismissing the complaint and directing the District to continue to reimburse the Schutzes for the cost of tuition during the pendency of the instant dispute.